Dear Ms. Bloxom:
On behalf of the Webster Parish Convention and Visitors Commission (Commission) you have requested an opinion of this office regarding the legal authority of the Commission to expend public funds. According to your request, several local governmental groups have formed a task force to encourage major movie companies to bring their filming to northwest Louisiana. The task force, known as Louisiana Films North, is comprised of the City of Springhill, the City of Minden, Claiborne Parish Industrial Group, Claiborne Parish Police Jury, Homer Industrial Board and the Claiborne Chamber of Commerce. The Webster Parish Convention and Visitors Commission desires to assist the task force with monetary donations. The Commission wishes to donate $5,000 for office expenses of Louisiana Films North and donate up to $20,000 to Louisiana Films North to pay for the making of a promotional film highlighting the region of Webster and Claiborne parishes. The Commission believes that the monetary donations will help promote, advertise and market the parish on a nationwide basis, thereby attracting more tourists to the area.
LSA-R.S. 33:4574A(2) created the Webster Parish Convention and Visitors Commission pursuant to Article VI, Section 19 and 30 of the 1974 Louisiana Constitution. R.S. 33:4574F specifically provides that the Commission shall be construed to be a political subdivision of the state, the purpose of which is the promotion of tourism within the jurisdiction of the Commission.
LSA R.S. 33:4574(E) provides that the Commission "shall have the power to sue and be sued, to accept grants and donations of every type, to make capital improvements for the purpose of obtaining federal funds, to do all things necessary for the promotion and the advertisement and publications of information relating to tourist attractions within its jurisdiction." *Page 2 
The Commission is authorized to levy a tax upon the occupancy of hotel rooms, and unless provided otherwise in any local, special, or general law, the proceeds of the occupancy tax so levied, less a reasonable sum to be paid as a collection fee, shall be used by the Commission for the operation of the Commission and for the purpose of attracting conventions and tourists into the area and jurisdiction of the Commission, including, but not limited to, the authority to spend money for advertising, promotion, and publication of information, or for any other purpose generally or specifically authorized for occupancy taxes in the two parishes, or by any local, special, or general law. The governing authority of the Commission may also enter into a cooperative endeavor agreement contract with the governing authority or authorities of the parish or parishes within its territories, or with other public entities for the performance of such duties and functions of the Commission which the Commission determines is necessary but is unable to perform itself. La. R.S. 33:4574.1-A.
Accordingly, any expenditure of public funds by the Commission must be for the purpose of enhancing and promoting tourism activities and for supporting activities consistent with the mission of the Commission. Pursuant to your request, the Commission will donate funds to a task force comprised of other local governmental entities that will make a promotional film highlighting the Webster and Claiborne Parish region and donate funds to assist in the payment of office expenses of the task force.
The Commission's expenditure of public funds must be examined in light of Article VII, Section 14 of the Louisiana Constitution of 1974. It provides, in pertinent part, the following:
 "§ Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . .
 * * *
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
As quoted above, Paragraph (A) generally prohibits the loan, pledge, or donation of public funds. Paragraph (C) of Section 14 authorizes the state and its political subdivisions (i.e., the Commission), to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the *Page 3 
cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A). City of Port Allen v. Louisiana Risk Management,et al., 439 So.2d 399 (La. 1983) and Op.Atty.Gen. No. 90-651.
In City of Port Allen, the Supreme Court ruled:
 "The cases that do exist [under La. Const. Art. IV § 12 (1921)] hold primarily that this section is violated whenever the state or political subdivision seeks to give up something of value when it is under no legal obligation to do so . . .
 * * *
 Section 14(C) does not help the state, either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose they still may not give away their assets to other political subdivisions, the United States Government, or public or private associations or corporations, or to individuals merely for a `public purpose'." (Emphasis added.)
The threshold requirement is the presence of a legal obligation or duty by the public entity to alienate public funds or property. See Beard-Poulan, Inc. v. Dept. of Highways,362 F. Supp. 547 (W.D. La. 1973); Town of Brusly v. West Baton RougeParish Police Jury, 283 So.2d 288 (La.App. 1st Cir. 1973).
This prerequisite is satisfied by the presence of a valid statute, ordinance, charter or contract. The vehicle by which the obligation is created may, nevertheless, be ultra vires or unconstitutional if it creates no binding legal obligation or if the obligation created is substantially inconsistent with, or beyond the scope of the Commission's authorized duties. Atty. Gen. Op. No. 90-651.
As noted above, the requirement of a legal duty is the threshold, but not the only predicate for the constitutionality of the expenditure. Second, the expenditure must also be for a public purpose. Third, the expenditure must create a public benefit proportionate to the cost (i.e., the amount expended). Op.Atty.Gen. Nos. 95-141, 93-787, 92-722, 92-127 and 90-651.
The initial issue to be determined regarding the proposed payments in question, is whether a valid legal duty or obligation exists for the Commission to undertake such expenditures. You advised that up to $20,000 of Commission funds would be used to assist in the making of a promotional film that would promote and attract tourism to the Webster Parish region. As previously noted, La. R.S. 33:4574 empowers the *Page 4 
Commission to promote tourism within the jurisdiction of the Commission and to enter into cooperative endeavor agreements with another governing authority or authorities of the parish or parishes within its territories or with other public entities for the performance of such duties and functions of the Commission which the Commission determines is necessary but is unable to perform itself. Clearly, this statutory framework constitutes valid legislation and, consequently, the presence of a legal obligation or duty on the part of the Commission, to enter into a cooperative endeavor agreement with other local governmental entities for the funding and making of a promotional film highlighting the Webster and Claiborne Parish region. Further, we find this obligation and/or expenditure to be substantially consistent and within the scope of the Commission's authorized duties.
However, there does not appear to any statutory requirement or authority that the Commission use its funds to pay the office expenses of the task force that will make the promotional film. Payment of office expenses of the task force which are not directly associated with the making of the promotional film or related to the promotion of tourism within Webster Parish would constitute a prohibited donation of public funds.
We turn now to the second prerequisite that the transaction between the Commission and the task force be for a public purpose. There can be no question that an expenditure of public funds that promotes tourism clearly serves a public purpose. See Op.Atty.Gen. Nos. 00-302, 98-312, and 96-86.
The third requirement, that the public benefit received is proportionate to the cost to be borne, is a factual determination that this office is not in a position to address. However, should this third requirement be met, then a cooperative endeavor should be formally entered into in accordance with the procedures set forth in R.S. 33:1321, et seq., entitled "Intergovernmental Functions" and cited as the "Local Services Law."
Accordingly, it is the opinion of this office that, Webster Parish Convention and Tourist Commission is authorized to enter into a cooperative endeavor agreement, as authorized by Art. VII, Section 14 of the Louisiana Constitution, with the task force composed of other governmental entities, to use its funds to assist in the making of a promotional film highlighting the Webster Parish region, if such use constitutes the promotion of tourism in Webster Parish and the cost is proportionate to the benefit received. It is the further opinion of this office that the donation of funds to pay for the office expenses of the task force and which are not directly related to the making of the promotional film or related to the promotion of tourism within Webster Parish would constitute a prohibited donation of public funds. *Page 5 
We trust this adequately responds to your request. If you have any questions or comments, please do not hesitate to contact our office.
With kindest regards,
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: __________________________ RICHARD L. McGIMSEY Assistant Attorney General
CCF/RLM/jav
 ATTACHMENT
ATTACHMENT